**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Steven Ondo, et al.,** | ) | **CASE NO. 1:13 CV 762** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **City of Cleveland, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

## Introduction

This matter is before the Court upon Motion to Dismiss of Defendants Cavanaugh, Tintlenot, and Diaz (Doc. 22), Motion to Dismiss of Officer Joseph Kean (Doc. 41), and City of Cleveland's Motion to Dismiss (Doc. 43). This is a § 1983 case alleging excessive force and "undisguised prejudice" against two gay men by the City of Cleveland and its officers and agents. For the following reasons, the motions are GRANTED.

## Facts

Plaintiffs Steven Ondo and Jonathon Simcox filed their Complaint against defendants City of Cleveland, Officer Clifford Kime, Officer Tintlenot, Officer Cavanaugh, Officer Kean, Sergeant Elias Diaz, Officer Park, Officer Livingston, Officer Rojas, Officer Freeman,

1

Officer Crytzer, Officer Johnson, Officer Sanchez, Officer Toomey, Corrections Officer Dennis Barack, Corrections Officer Rowell, and Corrections Officer Robinson. This is a re-filing of a Complaint filed by plaintiffs against the named defendants herein as well as six other defendants which were not re-named here. In the previous case, *Ondo, et al., v. City of Cleveland, et al.,* Case No.1:12 CV 122, a First Amended Complaint was filed. After the Court issued a Memorandum of Opinion and Order granting the Motion to Dismiss filed by the City of Cleveland and Officer Clifford Kime, the plaintiffs dismissed the case without prejudice. This Complaint was filed approximately seven months later.

The Complaint alleges the following. Plaintiffs, who are gay, live in an apartment in the City of Cleveland. On the evening of April 2, 2011, plaintiffs Ondo and Simcox unintentionally bothered a neighbor, off-duty Cleveland police officer Matthew Maclaren, who chose to resolve the matter by physically assaulting plaintiffs. Cleveland police arrested plaintiffs that night for aggravated disorderly conduct and obstructing official business. After the charges were dropped, plaintiffs were released from jail three days later.

Unbeknownst to plaintiffs, warrants were later issued for their arrest and charges were filed against them for felony assault on a police officer. The Cleveland Police Department determined that plaintiffs would be informed of their warrants and arrested by use of a Warrant Sweep scheduled for April 8, 2011.

On the morning of April 8, 2011, members of the "Sweep Team," consisting of three units of the Cleveland Police Department (Community Services Unit, SWAT Unit, and Warrant Unit), arrived at the plaintiffs' home. Officers Tintlenot, Cavanaugh, and Kean were members of the Community Services Unit, Officers Burant and Kime were members of the

Warrant Unit, Officers Park, Livingston, Rojas, Freeman, Crytzer, Johnson, Sanchez, and Toomey were members of the SWAT Unit. All participated in the Warrant Sweep at plaintiffs' home.

That morning, plaintiffs, along with Simcox's brother, Jesse Simcox, were asleep in the apartment and were awakened around 6:45 a.m. by loud banging and yelling. Plaintiffs, wearing only t-shirts and underwear, were confronted by officers wearing SWAT gear, punched, and ultimately handcuffed and arrested. The officers refused Jesse Simcox's request to see the arrest warrants or to get pants for plaintiffs before being taken to jail. The officers instead stated that plaintiffs were "faggots" and "don't get to wear pants in jail." The officers moved plaintiffs out to their front lawn where they were forced to stand in their underwear for five to ten minutes while enduring gay slurs by the officers. Plaintiffs learned from the others arrested that morning that the others had received advanced notice of the arrest and were allowed to get dressed before entering the van.

Corrections Officer Barack booked plaintiffs into the Cleveland Division of Corrections City Jail that morning and Officer Kime took their fingerprints. Corrections Officers Robinson and Rowell took the booking photographs. These defendants withheld pants from plaintiffs despite their requests. A female corrections officer ultimately gave them pants. Plaintiffs were released on April 10, 2011, and were forced to walk home without pants.

After trial, both plaintiffs were found not guilty of assaulting a police officer and the other charges brought against them.

The Complaint alleges the following claims: Count One alleges use of excessive

force by the Sweep Team (§ 1983), Count Two alleges violation of privacy by the Sweep Team and Corrections Officers (§ 1983), Count Three alleges failure to intervene and prevent continued violations of the Fourth Amendment by the Sweep Team (§ 1983), Count Four alleges violation of equal protection by the Sweep Team and Corrections Officers (§ 1983), Count Five alleges intentional infliction of emotional distress, and Count Six alleges invasion of privacy.

This matter is now before the Court upon the motions to dismiss filed by defendants Cavanaugh, Tintlenot, and Diaz; defendant Joseph Kean; and defendant City of Cleveland.

**Standard of Review**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir.1997). "To survive a Rule 12(b)(6) motion, the nonmoving party must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level."*ABS Industries, Inc. ex rel. ABS Litigation Trust v. Fifth Third Bank,* 2009 WL 1811915 (6th Cir. June 25, 2009) (citing

*Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir.2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In *Twombly*, the court held that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

### Discussion

### (1) Defendant Kean

Defendants move to dismiss Kean on the basis that the Complaint sets forth only general, conclusory allegations identifying him as a member of the Community Services Unit that participated in the April 8 arrest without attributing any specific conduct to him. Moreover, defendants assert, the Complaint alleges only that officers dressed in SWAT gear engaged in the illegal conduct. Kean is not alleged to have been dressed in SWAT gear, but is alleged to be a member of the Community Services Unit. Consequently, defendants contend, the § 1983, intentional infliction of emotional distress, and invasion of privacy claims fail to state a claim against Kean.

Plaintiffs counter that the excessive force claim is sufficiently plead because they are permitted to develop through discovery which individual committed the offensive conduct perpetrated by the collective group.  Additionally, Kean could be held liable for failing to intervene even if he did not use excessive force. Moreover, the Complaint specifically alleges that the "entire brigade of Sweep Officers- the ones in SWAT gear and all of the other

5

officers" verbally taunted plaintiffs. As for intentional infliction of emotional distress, plaintiffs point out that they have alleged that Kean was a member of a team of police that used excessive force, deprived plaintiffs of pants, and verbally taunted them. Invasion of privacy has also been sufficiently alleged given that the Complaint states that all officers verbally taunted plaintiffs outside their home based on their sexual orientation.

For the following reasons, the Court agrees with defendants that the Complaint fails to state a claim against Kean.

"To establish liability under Section 1983 against an individual defendant, a plaintiff must plead and prove that the defendant was personally involved in the conduct that forms the basis of his complaint." *Reynolds v. Smith*, 2012 WL 293012 (S.D.Ohio Feb. 1, 2012) (citing *Greene v. Barber,* 310 F.3d 889, 899 (6th Cir.2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)).

While plaintiffs assert that they are entitled to discover precisely how Kean violated their constitutional rights as a member of a group that did so, and that the Complaint "painstakedly details the violations plaintiffs endured during [the sweep]," plaintiffs' Complaint actually alleges that the constitutional violations occurred by officers in SWAT gear who had entered plaintiffs' home.  (See ¶¶ 44-63) Kean is not alleged to be a member of the SWAT unit. Nor does the Complaint allege that Kean, or members of the Community Services Unit, was in plaintiffs' home, viewed the excessive force, or was in a position to stop it.

Plaintiffs point out that the Complaint alleges that once outside, other officers, in addition to those dressed in SWAT gear, verbally taunted them. But, plaintiffs do not identify

6

a constitutional violation based on the homophobic slurs and it does not appear that one exists. *See Williams v. Sandel*, 433 Fed.Appx. 353 (6th Cir. 2011) (collecting cases stating that officers' use of verbal threats, racial epithets, or slurs do not transform a claim into one for excessive force) and *Goings v. Chicksaw Cty.,* 2008 WL 686917 (N.D.Iowa 2008) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir.1985)) ("The court does not consider, on an independent basis, Plaintiff's allegation that one of the officers called him a 'faggot.' No matter how reprehensible, 'name calling is not a constitutional violation.' ")

Finally, the Complaint refers to a Department of Justice investigation into whether the Cleveland Police Department has a practice of failing to document incidents and its use of excessive force. This is immaterial to whether the Complaint states a claim against Kean.

For these reasons, the Complaint fails to state a § 1983 claim against Kean.[1]

Under Ohio law, to prevail on an intentional infliction of emotional distress claim, plaintiffs must prove that Kean "(1) intended to cause [them] serious emotional distress; (2) the conduct was extreme and outrageous; and (3) the conduct was the proximate cause of [plaintiffs'] distress." *Colston v. Cleveland Public Library*, 2013 WL 1500438 (6th Cir. April 15, 2013) (citations omitted) "The alleged conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Plaintiffs assert that the Complaint alleges that Kean was a member of the team of police officers who effectuated

---

[1] While plaintiffs assert that Kean's request to dismiss the § 1983 claims only refers to the excessive force claim, it is clear from the Complaint that all the § 1983 claims are based on the facts described as perpetrated by the SWAT unit, with the exception of the taunting which occurred outside plaintiffs' home.

their arrest with excessive force, forced plaintiffs to remain in their underwear, and verbally ridiculed plaintiffs.  But, as discussed above, the Complaint does not allege that Kean participated in the excessive force.  It also alleges that the officers in SWAT gear did not allow plaintiffs to put on their pants. (Compl. ¶77, 81, 83) Remaining, therefore, is the allegation of the verbal ridicule which the Court does not find, as a matter of law, to rise to the level of intentional infliction of emotional distress.

Under Ohio law, invasion of privacy "involves the public disclosure of private facts, a required element of which is publicity. Publicity requires a communication to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Morgan v. Community Health Partners*, 2013 WL 2407123 (Ohio App. 9th Dist. June 03, 2013) (citing *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d at 166, 499 N.E.2d 1291 (10th Dist.1985) (internal quotations and other citations omitted).  The Complaint alleges that defendants publicly ridiculed and mocked plaintiffs in their front yard and in the paddy wagon that held others being transported to jail, and publicized plaintiffs' private affairs at the jail. (Compl. ¶ 149)

Plaintiffs argue that they have alleged "a sufficiently public broadcast .... in front of their neighbors and strangers who were drawn to the scene." (Doc. 46 at 11) The Court disagrees that the Complaint rises to the level of a "public disclosure" to the "public at large."


Plaintiffs' state law claims against Kean fail as well.

**(2) Defendants Cavanaugh, Tintlenot, and Diaz**

Defendants Cavanaugh, Tintlenot, and Diaz contend that the Complaint merely

8

identifies them as members of the Community Services Unit that participated in the April 8 arrest of plaintiffs. But, the Complaint does not attribute any specific conduct to them. As with defendant Kean, above, defendants assert that the Complaint only alleges inappropriate use of force by officers wearing SWAT gear, and that they are alleged to have been part of the Community Services Unit and not SWAT. For the following reasons, this Court agrees with defendants.

Plaintiffs point to their detailed allegations regarding the officers' use of force and other constitutional violations but fail to acknowledge that the Complaint clearly alleges that officers in SWAT gear committed all these acts. Cavanaugh and Tintlenot were members of the Community Services Unit. The only specific allegations that include all the officers, and which plaintiffs identify, are those concerning the verbal acts of taunting based on plaintiffs' sexual orientation. As discussed above, this allegation does not form the basis of a constitutional violation. On this basis, the Complaint fails to state a claim against Cavanaugh and Tintlenot.

As for Diaz, he is alleged to be the supervisor of the First District Community Services Unit. The Complaint alleges that he "is a policymaker with respect to the execution of warrant sweeps by members of the Cleveland Police Department." He did not follow Cleveland Police Department policy regarding investigation and reporting of use of force. Nor did he properly investigate the unconstitutional acts of the Sweep Team, thereby ratifying them. Finally, Diaz met with Officer Kime "prior to the warrant sweep to discuss it, and approved the methods the Sweep Team would use against" plaintiffs. (Compl. ¶¶ 17, 112, 136, 138)

9

To prove a claim for supervisor liability against Diaz, plaintiffs must show that Diaz "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460 (6th Cir.2006). "More than simple negligence and a right to control employees is required to find liability. To succeed on a failure to ...supervise claim, a plaintiff must show that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Comstock v. McCrary*, 273 F.3d 693 (6th Cir.2001). "To prove a § 1983 ratification claim, a plaintiff must show that a final municipal policymaker approved an investigation so inadequate as to constitute ratification of the alleged constitutional violation." *Lewis v. City of Cleveland*, 2013 WL 5564146 (N.D.Ohio 2013) (citing *Rush v. City of Mansfield*, 771 F.Supp.2d 827, 861 (N.D.Ohio 2011) )

Plaintiff relies on the ratification theory of liability, arguing that Diaz ratified the unconstitutional acts by failing to ensure that the officers properly documented the sweep and, therefore, there was no adequate investigation of it. As discussed above, all the alleged unconstitutional conduct is attributed in the Complaint to members of the SWAT unit, but Diaz is alleged to be a supervisor in the Community Services Unit.  There is no allegation that he had control over the officers in the SWAT unit.  The Court cannot find on the basis of the Complaint's allegations that it states a claim against Diaz for encouraging the specific incident, directly participating in it, or somehow approving it.

For these reasons, the Complaint fails to state a claim against Cavanaugh, Tintlenot, and Diaz.

**(3) Defendant City of Cleveland**

The City of Cleveland moves to dismiss on the basis of *res judicata* given that this Court granted the City's Motion to Dismiss in plaintiffs' previously filed action.

Claim preclusion "makes an existing final judgment or decree between the parties to litigation ... conclusive as to all claims which were or might have been litigated in a first lawsuit." *Carroll v. City of Cleveland,* 2013 WL 1395900 (6th Cir. April 5, 2013) (quoting *Nat'l. Amusements, Inc. v. City of Springdale*, 53 Ohio St.3d 60 (1990)).  "Under Ohio law, a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Id.* (citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995)). Four elements are required to establish claim preclusion:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction.
>
> (2) a second action involving the same parties, or their privies, as the first.
>
> (3) a second action raising claims that were or could have been litigated in the first action.
>
> (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Id.* (citing *Hapgood v. City of Warren*, 127 F.3d 490 (6th Cir. 1997)). The party asserting claim preclusion bears the burden of proof. *Id.* (citations omitted).

The Court finds that each element is met.  First, this Court granted the City's motion to dismiss in the previously filed case. "A dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits, and is therefore done with prejudice."  *Pratt v. Ventas, Inc.,* 365 F.3d 514 (6th Cir. 2004) (internal quotations and citation omitted).   Thus, there has been a prior, valid decision on the merits. Second, this action

11

involves the same parties as the first action. Third, all plaintiffs' claims were brought, or could have been brought, in the previous case. Fourth, this second action arises out of the same occurrence as the first action.

Plaintiffs agree that *res judicata* bars their official capacity claims against defendant Kime and their claims against the City on the theory of ratification because those claims were previously dismissed by the Court, but assert that the City should remain a party because it is the party in interest for each of plaintiffs' other official capacity claims given that claims against defendants in their official capacities are claims against the municipality.

This Court stated in its previous Memorandum of Opinion and Order:

> Finally, plaintiffs also contend that because the individual defendants were sued in their official capacities, the City of Cleveland is a proper defendant. While it is true that an official capacity claim is treated as an action against the City itself, "a successful suit against a municipal officer in his official capacity must meet the requirements for municipal liability stated in Monell." *Kraemer v. Luttrell*, 189 Fed.Appx. 361 (6th Cir. 2006). As discussed above, plaintiffs failed to state a claim for municipal liability.

Thus, the Court has already addressed this contention. Furthermore, any theory of liability against the City asserted in this Complaint could and should have been raised in the previous action and is, therefore, barred.

For these reasons, the City of Cleveland's Motion to Dismiss is granted.

**Conclusion**

For the foregoing reasons, the Motion to Dismiss of Defendants Cavanaugh, Tintlenot, and Diaz, Motion to Dismiss of Officer Joseph Kean, and City of Cleveland's Motion to Dismiss are granted.

IT IS SO ORDERED.


                                         /s/ Patricia A. Gaughan
                                         PATRICIA A. GAUGHAN
                                         United States District Judge

Dated: 11/19/13